IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JUAN DANIEL CANO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:18-CV-224-Z-BR |
| | § | |
| DIRECTOR, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DISMISS PETITION FOR A WRIT OF HABEAS CORPUS**

Before the Court is the *Petition for a Writ of Habeas Corpus by a Person in State Custody* filed by Petitioner Juan Daniel Cano ("Petitioner") challenging the constitutional legality or validity of his state court conviction and sentence. For the following reasons, Petitioner's habeas application should be DISMISSED with prejudice as time-barred.

**I.   BACKGROUND**

Petitioner was charged by indictment with the first-degree felony offense of murder in violation of Texas Penal Code section 19.02(b)(1). *See State v. Cano*, No. 8109-A; (ECF 16-1 at 3). Petitioner pleaded not guilty. (ECF 16-1 at 3.) A jury found Petitioner guilty as charged in the indictment. (*Id.* at 8). The jury sentenced Petitioner to twenty years' confinement. (*Id.* at 3). Petitioner filed a timely notice of appeal on April 11, 2011. (*Id.* at 15). On March 28, 2012, the Seventh Court of Appeals of Texas affirmed the judgment of the trial court. *See Cano v. State*, 369 S.W.3d 532, 533 (Tex. App.—Amarillo Mar. 28, 2012, pet. ref'd). Petitioner filed a motion for rehearing, which was overruled on May 10, 2012. *Id.* at 534. Petitioner then filed a petition for

discretionary review ("PDR") with the Texas Court of Criminal Appeals ("TCCA"), which was refused on June 27, 2012. *Id.* at 532; *Cano v. State*, No. PD-660-12 (Tex. Crim. App. June 27, 2012). Petitioner filed a petition for writ of certiorari with the United States Supreme Court, which was denied on May 13, 2013. *Cano v. State*, 133 S. Ct. 2336 (2013).

On March 9, 2018, Petitioner file a state application for a writ of habeas corpus challenging his murder conviction, which was denied without written order on the findings of the trial court without hearing on September 12, 2018. (*See* ECF 16-1 at 36); *Ex parte Cano*, No. 88,344-01 (Tex. Crim. App. Sept. 12, 2018).

Petitioner filed this federal habeas petition on November 19, 2018. (ECF 3). The Court ordered the State to file a preliminary answer addressing whether the statute of limitations barred Petitioner's claims. (ECF 7). The State did so; and Petitioner filed a reply brief. (ECF Nos. 16, 18).

## II.     PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

1. His trial counsel was ineffective for failing to object to the State's improper jury arguments and for failing to move for a mistrial;

2. his trial counsel was ineffective for failing to impeach the State's key witness with prior inconsistent statements;

3. his trial counsel was ineffective for failing to investigate potentially mitigating evidence—namely, a knife possessed by the victim at the time of the murder;

4. his appellate counsel was ineffective for failing to raise stronger ineffective assistance of counsel ("IAC") and prosecutorial misconduct arguments on direct appellate review; and

5. the prosecution engaged in misconduct by improperly summarizing a key witness's testimony in closing argument.

(ECF 3 at 6-8).

### III.   STATUTE OF LIMITATIONS

Title 28 U.S.C § 2244(d) imposes a one-year statute of limitations on federal petitions for writs of habeas corpus filed by state prisoners:

(1)   A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of –

  (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

  (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

  (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

  (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

Here, the pertinent dates are not in dispute. Following the denial of Petitioner's direct appeal to the Seventh Court of Appeals, he filed a PDR with the TCCA, which was refused on June 27, 2012. *See Cano v. State*, 369 S.W.3d 532, 533 (Tex. App.—Amarillo Mar. 28, 2012, pet. ref'd); *Cano v. State*, No. PD-660-12 (Tex. Crim. App. June 27, 2012). He then filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on May 13, 2013—the date the judgment became final by conclusion of direct review for purposes of Section

2244(d)(1). *Cano v. State*, 133 S. Ct. 2336 (2013). Thus, barring tolling, Petitioner was tasked with filing a federal habeas petition on or before May 13, 2014. And while a properly-filed state habeas application does toll the federal limitations period, Petitioner did not file his state habeas application until 2018—well after the time to file a federal application. Therefore, the 2018 state habeas application did not toll the time to file the federal application. *See* 28 U.S.C. § 2244(d)(2); *see also Frosch v. Thaler*, No. 2:12-CV-231, 2013 WL 271423, at *2 (N.D. Tex. Jan. 3, 2013), *rec. accepted*, 2013 WL 271446 (N.D. Tex. Jan. 24, 2013) ("Petitioner's fourth state habeas application, filed on October 16, 2012, did not toll the federal habeas corpus deadline because it was filed after the federal deadline had already passed.") (citation omitted).

## IV. STATUTORY TOLLING

Petitioner appears to argue that statutory tolling is appropriate pursuant to Section 2244(d)(1)(D), which provides that the one-year limitations period begins upon "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." (ECF 5 at 7). Although he admits that he was present for his criminal trial, he maintains that the factual predicate for his habeas claims was not apparent to him until "mid-2017" when he obtained a copy of the trial transcript. (*Id.* at 8).

The undersigned, however, agrees with the State that Petitioner "is confusing his knowledge of the factual predicate of his claim with the time permitted for gathering evidence in support of that claim." *Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir. 1998). The date on which the factual predicate could be discovered "means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015); *see also Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (noting that, pursuant to Section 2244(d)(1)(D), the

limitations period begins when the petitioner discovers, or should through reasonable diligence, the factual predicate of the claim, not the legal significance of the facts). Indeed, "[s]ection 2244(d)(1)(D) does not convey a statutory right to an extended delay…while a habeas petitioner gathers every possible scrap of evidence that might…support his claim." *Flanagan*, 154 F.3d at 199.

 Here, Petitioner makes three trial-related IAC claims: (1) that his trial counsel was ineffective for failing to object to prosecution misstatements during opening and closing arguments and for failing to seek a mistrial on that basis; (2) that his trial counsel was ineffective for failing to impeach a key witness; and (3) that his trial counsel was ineffective for failing to investigate potentially mitigating evidence. (ECF 3 at 6-7). He also makes a prosecutorial-misconduct claim, again, stemming from events that occurred at trial: the State's alleged mischaracterization of testimony during closing arguments. (*See id.* at 8). Petitioner, however, fails to explain how these claims were not discoverable without a copy of the trial transcript, noting only in conclusory fashion that his state habeas claims were "essentially legal arguments that petitioner couldn't have lodged without the record." (ECF 5 at 9). But, as Petitioner admits, he was present during the trial and was aware, or should have been aware, of the facts supporting his trial-related claims at that time. *See Vandyne v. Thaler*, Civil Action No. H-12-0329, 2012 WL 3150355, at *2 (S.D. Tex. July 31, 2012) ("However, Petitioner presents no probative summary judgment evidence, and the record does not establish, that he could not have discovered the *factual* predicate of his claims, through the exercise of due diligence, until he received a copy of his trial transcript. To the contrary, petitioner was present at trial and knew, or could have discovered through the exercise of due diligence at that time, the factual predicates for his claims that counsel failed to object to extraneous offense evidence during trial and closing argument."); *Santilan v. Cockrell*, No. CIV.A.

3:01-CV-20270, 2002 WL 999376, at *3 (N.D. Tex. May 9, 2002) (dismissing as time-bared the petitioner's habeas claims centered upon actual innocence, prosecutorial misconduct at trial, and insufficient evidence to convict and noting that "Petitioner's contention that the date of receipt of his trial testimony and the trial court record should be the triggering event for the AEDPA's one year statute of limitations is simply untenable," as "[t]ranscripts…are not the sort of 'facts' contemplated by [Section 2244(d)(1)(D)]") (citing *United States v. Agubata*, 1998 WL 404303, at *3, n.1 (D. Md. July 9, 1998); *United States v. Concepcion*, 1999 WL 225865, at *3 (E.D. Pa. Apr. 19, 1999)).

As for the ineffective assistance of appellate counsel claim (ECF 3 at 7), the same logic applies: the factual predicate for this claim became known or should have become known to Petitioner when the direct-appeal brief was initially filed. *See Martin v. Fayram*, 849 F.3d 691, 697 (8th Cir. 2017) ("Martin's ineffective assistance of appellate counsel claim turned on his appellate counsel's failure to raise his trial counsel's alleged ineffective assistance. Martin would have been aware of his appellate counsel's failure to raise that claim on appeal as soon as he had 'read the brief filed on his behalf.' ") (citation omitted). Thus, Petitioner cannot rely upon Section 2244(d)(1)(D) for statutory tolling.

## V.     EQUITABLE TOLLING

Petitioner also argues that equitable tolling should apply because his attorney was non-communicative and misrepresented to him that he would file a timely federal habeas petition, and because Petitioner was unable to obtain a copy of the trial transcript until "mid 2017" because he could not afford to order a new copy from the State and because his habeas attorney failed to return his copy to him. (*See* ECF 8 at 7-9; ECF 18 at 1).

The Fifth Circuit has held that the AEDPA's one-year statute of limitations can, in rare and exceptional circumstances, be equitably tolled. *See Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.

1998). However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation marks omitted). "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006). A petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (emphasis deleted). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id.* at 653. Nevertheless, "[e]quity is not intended for those who sleep on their rights." *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989).

"[A]ttorney error usually does not constitute an extraordinary circumstance warranting equitable tolling." *Reaux v. Vannoy*, Civil Action No. 19-2529, 2019 WL 6770048 at *5 (E.D. La. Dec. 12, 2019) (citing *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002)). But in *Holland*, the Supreme Court carved out an exception to the general rule, holding that a "garden variety claim of misconduct" does not warrant equitable tolling but "far more serious instances of attorney conduct may." *Holland*, 560 U.S. at 651-52. In *Holland*, for example, "there was an almost complete breakdown in communication between Holland and his counsel, and Holland's attorney failed even to inform Holland when the state supreme court denied him relief, much less file a timely federal application to preserve his rights." *Reaux*, 2019 WL 6770048, at *5 (citing *Holland*, 560 U.S. at 637-39). And the Fifth Circuit has also found that equitable tolling could be appropriate when the

petitioner's attorney intentionally misrepresents to the petitioner that he or she has timely filed a habeas petition on their behalf. *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002).

Here, the bulk of Petitioner's attorney-misconduct argument stems from his habeas counsel's assurance to Petitioner that he would file a federal habeas petition on Petitioner's behalf. More specifically, and confirmed through a series of letters purportedly sent to Petitioner, on May 1, 2014, (less than two weeks before the federal habeas petition was due) Petitioner's attorney wrote him a letter stating that, "[t]he federal writ is due in late June, and it'll be done and filed by then…" (ECF 18-1 at 5).[1] But on June 23, 2014, Petitioner's habeas counsel wrote him another letter saying that he could not write the federal habeas petition because "even if we got past the procedural default of not raising the speedy trial issue in the trial court, we wouldn't succeed…" (*Id.* at 7).

The seminal case in the Fifth Circuit on the issue of attorney deception and equitable tolling is *Wynn*. There, the petitioner's attorney initially advised him that he would file a Section 2255 petition on the petitioner's behalf. *Wynn*, 292 F.3d at 228. Later, the petitioner's attorney informed him that he had filed the Section 2255 petition and that a copy would be forwarded to the petitioner. *Id.* Then, in response to a letter from the petitioner, the court informed the petitioner that no petition had been filed. The petitioner's father contacted the attorney, who again misrepresented that he had filed the habeas petition, stating that "the reason the court did not find anything in the record to show a habeas filing was because he [petitioner's attorney] had filed the habeas corpus petition directly with Judge McBryde and was awaiting a response from the Judge and we must be patient." *Id.* at 228-29. The petitioner later filed the habeas petition himself, after the statute of limitations

---

[1] Petitioner moved, concurrently with the filing of his reply brief, to supplement the record with these letters. The Court construed Petitioner's filing as a motion (ECF 26) and GRANTED the motion by separate order. The letters bearing on the equitable tolling (ECF 18-1) are considered herein.

had run. Under those circumstances, the Fifth Circuit concluded that equitable tolling question was "sufficiently close to warrant remand for factual findings" on the issues of whether the petitioner's allegations were true, and, if so, whether he was reasonable in relying upon the false representations of his counsel. *Id.* at 230.

And more recently, in an unpublished decision, *Jimenez v. Butler*, 839 Fed. Appx. 918 (5th Cir. 2021), the Fifth Circuit applied *Wynn* to a situation in which a petitioner's initial habeas attorney misrepresented to the petitioner that his state habeas petition, "which would have stopped the clock, was being prepared for filing." *Id.* at 920. It was not. But the petitioner did not realize he was being "duped" until seven and half months of the federal limitations period had elapsed. He fired the deceptive attorney, but his second habeas counsel also erred by failing to promptly return his case file materials following the denial of the state habeas petition. The Fifth Circuit held that "the combined deception and tardiness of counsel constitute extraordinary circumstances, which considered together, resulted in [the petitioner] missing the time target of the limitations period." *Id.*[2]

Even assuming, though, that Petitioner's habeas attorney's alleged misconduct here was so grievous as to amount to an extraordinary circumstance under *Wynn*, this does not necessarily justify the nearly-four-year-long gap between the June 23, 2014 letter alerting Petitioner of his counsel's alleged deception, i.e., that the attorney originally represented he would file a petition and later informed petitioner he would not file a petition, and Petitioner's 2018 filing of his state

---

[2] The undersigned notes at least two district court opinions in which *Wynn* was held inapplicable when the attorney merely represented that he *would* file a habeas petition and failed to do so—not, as in *Wynn*, that he had already filed the petition. *See, e.g., Mayo v. Cain*, Civil Action No. 08-1446, 2009 WL 2256925 (W.D. La. April 7, 2009), *rec. accepted* 2009 WL 1160595 (W.D. La. Apr. 29, 2009); *Bailey v. Dretke*, No. Civ. A. H-04-918, 2006 WL 355233 (S.D. Tex. Feb. 13, 2006).

habeas petition.³ Importantly, Petitioner must have "acted with reasonable diligence throughout the period he seeks to toll." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). Indeed,"[w]hen a habeas petitioner faces an extraordinary circumstance that prevents him or her from timely filing his or her petition, the petitioner is entitled only to a tolling period 'equal to the length of time between (i) the date on which filing ordinarily would have been required under the applicable limitations period and (ii) *the earliest date* after the [extraordinary circumstance] by which that petitioner, acting with reasonable diligence, should have filed his or her petition.' " *Tellado v. U.S.*, 799 F.2d 156, 167-68 (D. Conn. 2011) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) (emphasis in original) (citation omitted)); *see also Smith v. Davis*, 953 F.3d 582, 599, 600 (9th Cir. 2020) ("What we make clear is that it is not enough for a petitioner seeking an exercise of equitable tolling to attempt diligently to remedy his extraordinary circumstances; when free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights."). "In other words, to gain the benefit of equitable tolling, [Petitioner] would have to show not only that an extraordinary circumstance prevented him from filing his [Section 2254] petition within the one-year limitations period, but also that it was impossible for him, acting with reasonable diligence, to file it at any time earlier than [November 26, 2018]." *Tellado*, 799 F.2d at 168.

Here, even assuming his habeas counsel engaged in the intentional deceit necessary to justify equitable tolling, Petitioner knew of such deceit, at the latest, on or around June 23, 2014. And even assuming that equitable tolling applied until that date, Petitioner did not file any type of habeas petition—federal or state—until March of 2018. Petitioner must account for this nearly-

---

³ It is unclear whether Petitioner is claiming his attorney completely abandoned him, which can also qualify as an extraordinary circumstance for purposes of equitable tolling. *See Manning v. Epps*, 688 F.3d 177, 184 n.2 (5th Cir. 2012) (noting that "complete attorney abandonment can qualify as an extraordinary circumstance for equitable tolling purposes") (citation omitted). Regardless, Petitioner's allegations fail to establish complete abandonment. Instead, his counsel continued to communicate with him until determining that a federal habeas petition would be futile. And even if Petitioner could show abandonment, for the same reasons as discussed in relation to attorney deception, Petitioner has not shown that he was diligent following the abandonment.

three-year gap. *See Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007) (noting that the petitioner must remain diligent "throughout the period that he seeks to toll"); *see also Jackson v. Davis*, 933 F.3d 408, 411 (5th Cir. 2019) ("What a petitioner did both before and after the extraordinary circumstances that prevented him from timely filing may indicate whether he was diligent overall.") (footnote omitted).

Petitioner points to no case—and the undersigned can find none—in which a habeas petitioner acted with reasonable diligence for equitable tolling purposes by waiting *years* to act following the cessation of the extraordinary circumstance—in this case the alleged attorney deception. Instead, litigants are often penalized for waiting months to act. *See, e.g., Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001) (holding that petitioner had not shown reasonable diligence because he "waited more than four months to file his federal habeas petition"); *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999) (per curiam) (holding that petitioner had not shown reasonable diligence because "he did not file his § 2254 petition until approximately six months after learning of the denial of his state postconviction application," and "d[id] not explain the six-month delay between being notified about his state application and filing his federal petition"); *Koumjian v. Thaler*, 484 F. App'x. 966, 969-70 (5th Cir. 2012) (per curiam) (holding that petitioner had not shown reasonable diligence because his delay in filing "exceed[ed] four and a half months"). Although the undersigned recognizes that the equitable tolling analysis "does not lend itself to bright-line rules," *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), and that equitable tolling decisions "must be made on a case-by-case basis," *Holland*, 130 S. Ct. at 2563, this jurisprudence is nevertheless instructive.

Further, the undersigned concludes that Petitioner's inability to access his trial transcript until mid-2017 does not excuse the delay in filing here—especially where he does not adequately

explain how he could not have discovered his trial-related claims without the transcript. "As the Supreme Court has noted in the § 2255 context, restrictions on free transcripts do not violate the Due Process Clause of the Fifth Amendment because 'the usual grounds for successful collateral attacks upon convictions arise out of occurrences outside of the courtroom or of events in the courtroom of which the defendant was aware and can recall without the need of having his memory refreshed by a transcript.' " *Ekwere v. Davis*, Civil Action No. 7:19-CV-0092, 2020 WL 5219560, at *5 (S.D. Tex. Feb. 28, 2020) (quoting *United States v. MacCollom*, 426 U.S. 317, 327-28 (1976) (quoting, in turn, *United States v. Shoaf*, 341 F.2d 832 (4th Cir. 1964)). Thus, "[w]hile a transcript might aid in supporting a claim, it will 'rarely, if ever' illuminate a reason for a collateral attack on a conviction." *Ekwere*, 2020 WL 5219560, at *5 (citations omitted). Accordingly, lack of access to the trial transcript will not support equitable tolling. *See, e.g., Paul v. Davis*, Civil Action No. H-19-3625, 2020 WL 1955278, at *7 (S.D. Tex. Apr. 23, 2020) ("Likewise, equitable tolling is not available for lack of access to a trial transcript.") (citing *Roughley v. Cockrell*, 45 Fed. Appx. 326 (5th Cir. 2002) (per curiam) (rejecting claim for equitable tolling based on an inmate's unfulfilled request for state court records); *see also Perez v. Cate*, No. 09-cv-0414-H (BLM), 2009 WL 5199409, at *5 (S.D. Cal. Dec. 23, 2009) (finding that a petitioner's lack of access to transcripts, among other legal files, does not constitute an extraordinary circumstance justifying equitable tolling because petitioner "does not give concrete examples of the type of information he hoped to obtain from the record or why his direct knowledge of what occurred at trial was insufficient"); *United States v. Arrellano-Lopez*, No. C-06-818(1), 2007 WL 4367810, at *2 (S.D. Tex. Dec. 13, 2007) (noting that a defendant "is not precluded from filing a Section 2255 motion merely because he does not have transcripts from his case"); *Brown v. Cain*, 112 F.Supp.2d 585, 587 (E.D. La. 2000) ("Petitioner fails, however, to show why he needed these transcripts to file

his State application. Furthermore, a review of Petitioner's state application indicates that none of the arguments set forth therein relied specifically on the transcripts. Rather, the arguments were essentially legal arguments that Petitioner could have lodged without the transcripts. Indeed, Petitioner experienced all the pretrial proceedings and the full trial; thus, the legal arguments should have been apparent to Petitioner without the transcripts.").

Finally, even were Petitioner's alleged inability to access his trial transcript—whether alone or combined his attorney's conduct—an extraordinary circumstance for tolling purposes, he still has not exercised the requisite diligence to justify his belated federal filing. Specifically, Petitioner claims that he "succeeded" in obtaining his trial transcript in "mid-2017." (ECF 5 at 8-9). Yet he still waited, at the least, *months* to file his state habeas petition. And when that petition was denied, he waited two more months to file his federal petition.

In sum, Petitioner cannot rely upon equitable tolling to justify his belated November 26, 2018 habeas filing, which was filed more than four years after his state conviction became final pursuant to § 2244(d)(1).

## VI. RECOMMENDATION

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by Petitioner JUAN DANIEL CANO be DISMISSED with prejudice as time barred.

## VII. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED September 17, 2021.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).